## McFARLAND v. WENDORF et al.

(Circuit Court of Appeals, Ninth Circuit. October 20, 1924.)

No. 4266.

1. **Bankruptcy** ⊚184(2)—**If logs were left in possession of vendor, transfer void when bill of sale not recorded, but valid if there was change of possession.**

Under Rem. Comp. Stat. Wash. § 5827, if logs sold were left in possession of vendor, transfer was void as against existing creditors, and as against seller's trustee in bankruptcy subsequently appointed, where bill of sale was not filed for record; but, if there was change of possession of logs, transfer was valid as against the world.

2. **Fraudulent conveyances** ⊚147(3) — **Marking of logs held to show change of possession, making unrecorded sale valid against the world.**

Where logs sold, then piled along roadway, were marked with initials of purchaser in customary way to indicate ownership, there was a sufficient change of possession, so that sale was valid as against creditors, though bill of sale was not filed for record, as required by Rem. Comp. Stat. Wash. § 5827.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; J. Stanley Webster, Judge.

Suit in equity by L. M. McFarland, as trustee in bankruptcy of F. P. La Sota, against A. W. Wendorf and G. A. Rogers, doing business as Wendorf & Rogers. Decree for defendants, and plaintiff appeals. Affirmed.

Lund & Dodds, of Spokane, Wash., and W. Lon Johnson, of Colville, Wash., for appellant.

E. H. Belden and Hamblen & Gilbert, all of Spokane, Wash., for appellees.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

RUDKIN, Circuit Judge. On the 24th day of March, 1923, one La Sota executed a bill of sale, transferring to Wendorf & Rogers all the Idaho white pine logs cut by him and decked on Rocky Creek road, above Aladdin, in Stevens county, Wash. The bill of sale was accompanied by an agreement on the part of the vendor to convey the logs to his mill as rapidly as possible and convert them into lumber. At the time of the execution of the bill of sale the logs were piled along the roadway, each pile containing from 50 to 1,000 logs. Upon the execution of the bill of sale the logs thus purchased were marked by direction of the purchasers. This was done by placing the initials of the purchasers, W. & R., on the ends of four, five, or more logs in each pile, with a crayon pencil. In some instances the initials were re-

versed, but this was later corrected, and some of the logs were more plainly marked. This was the customary way of marking logs in that vicinity to indicate ownership. The bill of sale was not recorded until May 24, 1923. On August 8, 1923, La Sota filed a voluntary petition in bankruptcy, and thereafter the trustee in bankruptcy instituted the present suit against the purchasers to recover the property thus transferred. The court below dismissed the bill, and the trustee has appealed.

[1] There seems to be some contention that the bill of sale was given as security, but there is nothing in the record to bear out that contention or to show that the transfer was other than absolute and unconditional. Section 5827, 2 Rem. Comp. Stats., provides as follows:

"No bill of sale for the transfer of personal property shall be valid, as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the said bill of sale be recorded in the auditor's office of the county in which the property is situated, within ten days after such sale shall be made."

[2] The bill of sale was not filed for record within 10 days as required by law, and if the logs were left in the possession of the vendor the transfer was void as against existing creditors and as against the trustee in bankruptcy. If, on the other hand, there was a change of possession, the transfer was valid as against all the world. Was the property left in the possession of the vendor is therefore the only question in the case, and that is a question of fact, and of local law. In Haskins v. Fidelity Nat. Bank, 93 Wash. 63, 159 P. 1198, cited by appellees, the court said:

"It is strenuously argued by the appellant that there was no manual delivery of the lumber to the bank prior to the time of the assignment by Mr. Holston to Mr. Haskins for the benefit of creditors, that the evidence shows that Mr. Phelps simply checked over the lumber, and that there was no outward indication of any change of possession from Mr. Holston to the bank. It is no doubt true that there was no outward open possession indicated after Mr. Phelps had left the property. But it was not property of which manual possession could be taken. It was lumber piled in the yards of the mill. In Churchill v. Miller, 90 Wash. 694, 156 P. 851, after reviewing a number of cases from this court and other courts, we said: '35 Cyc. 311, 312, is cited to the effect that the general rule is that the delivery must

consist of an actual and continuous transfer of property. This rule must be applied, however, in view of the character and situation of the property and circumstances. Although such possession as a purchaser can reasonably take must be taken, it is not essential, as against creditors and subsequent purchasers, that there should be in all cases an actual manual delivery or a change of possession at the time of the sale, or immediately—citing also 5 R. C. L. 397. The rule is stated in 35 Cyc. 312, as follows: "It has been held that it is sufficient as against creditors and subsequent purchasers if notice of the sale is given to the third person in possession, unless his possession is of such a character that it does not convey any notice to the world of the change of ownership. * * * " , "

The facts in the two cases are not identical, however, and the decision is only important in so far as it establishes or recognizes the general rule on the subject. The appellant, on the other hand, cites Houghland v. Wolfe, 122 Wash. 473, 210 P. 805. That case involved the transfer of an automobile from son to father, and there was no change of possession and nothing to indicate a change of ownership. A case more nearly in point is Northern Mercantile Co. v. Schultz, 56 Wash. 393, 105 P. 850, where the court said:

"The only question involved in the appeal is, Did the appellant purchase and accept delivery of the cedar poles? The court below so found, and a reading of the record establishes the correctness of such a finding. At the time of the sale, the poles were on the river bank, and the agent of the appellant, with a piece of lumberman's chalk, marked each pole across the end, and stated he would thereafter send a barge, and respondent agreed to load them upon the barge. This would be an acceptance and delivery, and did not mean that delivery was postponed until the loading upon the barge. The marking of the poles was a clear expression of intent to exercise ownership. It was an exercise of dominion over the poles, and manifested an acceptance and intention to claim them as the poles of appellant."

In the present case the logs were marked in the customary way to indicate ownership in the purchasers, and under the circumstances we are constrained to hold that there was a sufficient delivery and change of possession to satisfy the requirements of the statute.

The decree of the court below is therefore affirmed.